**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 07-118-JBC**

**ZURICH AMERICAN INSURANCE COMPANY,**                    **PLAINTIFF,**

**V.**             **MEMORANDUM OPINION AND ORDER**

**WESTFIELD INSURANCE COMPANY, ET AL.,**              **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's motion for partial summary judgment (R. 60) and defendant Westfield's motion for summary judgment (R. 62). The court, having reviewed the record and being otherwise sufficiently advised, will grant the motions in part and deny them in part.

**I. Factual and Procedural Background**

The plaintiff, Zurich American Insurance Company ("Zurich"), brought this action for declaration of rights seeking a determination that the defendant Westfield Insurance Company ("Westfield") is wholly or partly responsible for the defense and indemnification of claims asserted in a lawsuit, *Brace v. Merriett*, Case No. 05-CI-3409, filed in Fayette Circuit Court, Fayette County, Kentucky. The underlying lawsuit arose out of a motor vehicle accident on April 10, 2003, in which Rob Brace was in a vehicle struck by a truck[1] driven by Thomas R. Merriett. Brace brought the state action against Merriett, Republic Industries (Merriett's employer),

---

[1] 1995 International truck, VIN 1HTSDAANOSH249127.

Republic Welding Company, and Republic Industries International Inc.

At the time of the accident, Republic Industries was a d/b/a of Republic Welding Company ("Republic Industries").[2]  Republic Industries was insured through Zurich.  Republic Diesel was a subsidiary or division of Republic Welding until it was sold in 2000.  *See* R. 60-2, at 5 (quoting Deposition of Thomas Kinderman, at 9). Republic Diesel and its insurance company, Westfield, were not named as defendants in the state court action.

The state court complaint alleges that Merriett was acting within the scope of his employment at the time of the accident.  Republic Industries holds paper title to the truck driven by Merriett.  Merriett drove the truck to provide shuttle mining services on behalf of Republic Industries and Republic Diesel.  The two companies shared the expenses of the shuttle truck, including the costs, maintenance, and driver's salary.  Republic Industries paid the expenses and Republic Diesel later reimbursed Republic Industries based on the proportion of sales attributable to each company.  Despite the separation in ownership of Republic Diesel and Republic Industries, they continued to share the shuttle because customers continued to receive products and services from both companies.

A. <u>Zurich Insurance Policy</u>

Republic Welding and Republic Industries are insured through Zurich, including coverage entitled "Commercial Auto Insurance."  Certain vehicles are

---

[2] Since the April 10, 2003, accident, Republic Industries was sold and became Republic Industries International.

listed specifically on the policy, but the truck driven by Merriett is not listed on the "schedule of covered autos you own" or anywhere else in the policy. The $1,000,000 liability coverage applies to covered autos as defined by "1." *See* exhibit 9-5, attached to R. 60. According to the policy's "business auto coverage form," the symbol "1" is defined as "any 'auto,'" as opposed to the symbol "2" which includes only those autos owned by the policy holder. *See* exhibit 9-11, attached to R. 60. The term "auto" is defined in the policy as a land motor vehicle designed for travel on public roads. *See* exhibit 9-13, attached to R. 60. The "general conditions" section of the policy includes the following language:

> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .
> 
> . . .
> 
> d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Exhibits 9-12, 9-13, attached to R. 60.

    B. <u>Westfield Insurance Policy</u>

Republic Diesel has insurance coverage through Westfield. The "commercial auto coverage part" of the Westfield policy includes auto liability coverage up to $1,000,000 for covered autos. Exhibits 11-2, 11-3, attached to R. 60. The truck driven by Merriett is individually listed on Westfield's "schedule of covered autos

3

you own" as a 1995 International, serial number 1HTSDAANOSH249127.  Exhibit 11-4, attached to R. 60.  The total premium paid on the truck is listed as $1,586.00, including $1,368 for liability.  The commercial auto coverage portion of the policy does not include language regarding "other insurance" coverage.[3]

The Westfield policy additionally includes umbrella coverage up to $2,000,000.  The "commercial umbrella coverage form" includes the following language regarding other insurance: "If other valid and collectible insurance is available to the insured for a loss also covered by this coverage, the insurance afforded by this coverage shall apply as excess of and not contribute with such other insurance."  Exhibit 11-21, attached to R. 60.

## II. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Id*. at 324-25.  To survive summary judgment, the non-movant must come forward with evidence on which a jury could reasonably find in its favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ.

---

[3] *See* section III.C for further discussion.

P. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

**III. Legal Analysis**

Zurich and Westfield each filed a motion for summary judgment requesting that the other insurance company be found to owe a duty to defend and indemnify any claim arising out of the accident at issue. Under Kentucky law, "[i]t is well established that '[w]hen the contest is between two insurers, the liability for a loss should be determined by the terms and provisions of the respective policies . . . .' *State Farm Mutual Auto. Ins. Co. v. Register*, 583 S.W.2d 705, 706 (Ky. Ct. App. 1979). Furthermore, where the terms of an insurance policy are clear and unambiguous, the policy should be enforced as written. *Masler v. State Farm Mutual Auto. Ins. Co.*, 894 S.W.2d 633, 636 (Ky. 1995)." *Chicago Ins. Co. v. Travelers Ins. Co.*, 967 S.W.2d 35, 37 (Ky. Ct. App. 1997). Thus, the court will look to the insurance policies to determine whether either insurer has a duty to defend and indemnify in the underlying suit, whether the policies provide primary or excess coverage, and, finally, how the expenses and losses should be divided

between the two insurers.

      A.  Duty to Defend and Indemnify

Under Kentucky law, liability coverage is not personal, but runs with the vehicle. *Windham v. Cunningham*, 902 S.W.2d 838, 841 (Ky. Ct. App. 1995) (citing *Butler v. Robinette*, 614 S.W.2d 944, 947 (Ky. 1981)). "An automobile insurance company has a general responsibility to provide coverage for people who may not be named insureds in the written policy, but fall under the coverage provided for in the policy." *Mitchell v. Allstate Insurance Co.*, 244 S.W. 3d 59, 61 (Ky. 2008) (citing 46 C.J.S. *Insurance* § 4045 (1993)).

The Westfield policy includes $1,000,000 in commercial auto liability coverage for covered autos.  The truck at issue is specifically identified on the policy and Republic Diesel paid a specifically designated amount for liability on the truck.  Additionally, the Westfield policy includes hired and non-owned coverage; thus, the policy covers the "non-owned" truck even though Republic Diesel does not hold paper title to the truck.  Republic Diesel had an insurable interest in the truck because the shuttle truck was driven by Merriett on behalf of both Republic Industries and Republic Diesel. *Patrick v. Ky. Farm Bureau Mut. Ins. Co.*, 413 S.W.2d 340, 343 (Ky. 1967) ("Insurable interest is that interest in the subject matter insured by virtue of which the person insured will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction or injury by the happening of the event insured against."). Liability

coverage runs with the vehicle, and Westfield's policy includes auto coverage on the truck driven by Merriett.  Thus, Westfield has a duty to defend and indemnify in the underlying state court action.[4]

Zurich argues that Republic Industries did not own the truck involved in the accident, but that Republic Diesel was the owner.  However, Republic Diesel was not an owner of the truck, despite its being listed on Westfield's policy as an owned vehicle.  Under Kentucky law, an owner is "a person who holds the legal title of a vehicle or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest."  KRS § 186.010 (7)(a).  Physical possession of the vehicle is unclear from the deposition testimony and is disputed by the parties.  However, Republic Diesel did not have title to the truck.  Thus, Zurich's policy also includes liability coverage for the truck because Republic Industries owned the truck and the policy provides coverage for owned autos.

---

[4] Westfield admits that the truck driven by Merriett was insured at the time of the accident by both Zurich and Westfield.  However, Westfield argues that although it provided Republic Diesel with insurance on the truck, the driver was not an employee or agent of Diesel and thus it is not vicariously liable for the driver's actions.  Republic Industries does not contest that Merriett was its employee and that he was acting within the scope of his employment when the accident occurred.  Westfield argues that Republic Diesel's lack of control over Merriett precludes any imputation of liability on Diesel for Merriett's actions.  However, Merriett was sued in the state-court action in his individual capacity in addition to the claims against his employer for vicarious liability.  Republic Diesel knew that Merriett was driving the truck which it had insured through Westfield.  Additionally, Republic Diesel reimbursed Republic Industries for a portion of the expenses of operation of the shuttle truck, including Merriett's salary.  *See* exhibit 7, attached to R. 60.

B.  Primary Versus Excess Coverage

Zurich argues that the Westfield policy is primary. As to whether the Westfield policy is primary or excess, the declarations page states "GARAGEKEEPERS - DIRECT PRIMARY ENDORSEMENT, $3,791," and an amendment effective October 1, 2002, states on the endorsement that the direct coverage option is "primary insurance" by marking the appropriate box.  Exhibits 11-4, 11-30, attached to R. 60.  The issued endorsement is labeled "GARAGEKEEPERS COVERAGE" but states that the "endorsement modifies insurance provided under the . . . BUSINESS AUTO COVERAGE FORM."  Exhibit 11-29, attached to R. 60.  Thus, the "primary" designation applies to the commercial auto coverage provided under Westfield's policy.

Zurich's policy states that "for any covered 'auto' you own, this Coverage form provides primary insurance."  Exhibit 9, attached to R. 62.  Since Republic Industries held the paper title on the truck, it owned the truck.[5]  The truck was not

---

[5] Paper title was held by Republic Industries, the company insured by Zurich, at the time of the accident.  However, Zurich argues that Republic Diesel intended to own the vehicle and thus included the vehicle on its insurance with Westfield and paid a premium on the truck.  According to Zurich, the possession of the paper title is not determinative when resolving a dispute between insurance companies. *Omni Insurance Company v. Kentucky Farm Bureau Mutual Insurance Company*, 999 S.W.2d 724 (Ky. Ct. App. 1999). In *Omni*, a father bought a car for his son and obtained insurance on the car.  Upon receiving the title the father sent it to the son, who signed and mailed it.  The son then purchased his own insurance on the car.  The father took the title to the clerk's office to transfer ownership, but that same morning, and before the transfer was effected, the son had an accident.  In a dispute between the father's and son's insurance companies, the court found that even though the father still had paper title to the car at the time of the accident, the son's insurance company had agreed to protect the son "against liability arising

specifically listed on Zurich's policy, but Republic Industries owned the vehicle and employed the driver, and thus its coverage is primary.

The Zurich and Westfield policies thus both provide primary coverage on the truck driven by Merriett in the relevant accident. The Westfield policy additionally provides umbrella coverage of $2,000,000. The "schedule of underlying insurance" for the umbrella coverage lists the $1,000,000 auto liability policy by Westfield. Exhibit 11-12, attached to R. 60. Thus, the umbrella coverage acts as excess after the primary coverage is exhausted.

C. Division of Coverage Among Multiple Insurers

Zurich argues that if both auto policies are deemed primary, then the "other insurance" provision in the Zurich policy controls as to their respective obligations because Westfield does not have a comparable provision applicable to the commercial auto coverage.[6] Zurich states that in such a situation it would pay only

---

out of the use of the vehicle and charged him a premium for that protection." *Id.* at 727. The court found that liability should be apportioned "between the two insurers according to their respective insuring contracts which contain 'other insurance' clauses." *Id.* at 728. However, the intended owner of the vehicle was clear in *Omni,* and public policy concerns were met by the intended owner's obtaining insurance on the vehicle prior to the completed transfer of title. Even though Republic Industries similarly held a paper title, it was clear in *Omni* that both parties intended for ownership to be transferred. In the present case it is not clear from deposition testimony or otherwise which company intended to own the truck.

[6] Zurich argues that the Westfield policy does not include an "other insurance" provision applicable to the primary auto coverage. Zurich argues that the "other insurance" provision included in Westfield's "commercial umbrella coverage form" applies only to the umbrella policy and not to the commercial auto coverage portion of the Westfield policy.

its fifty percent share up to two million dollars since both policies have one-million-dollar limits.  "That sharing would not only apply to any indemnification required, up to a judgment for two million dollars, it would also apply to expenses incurred in the defense of the state action.  Westfield's obligations under its umbrella policy would come into play if a judgment is rendered in excess of $2,000,000."  R. 60, at 21.

Westfield argues that if its policy is found to provide primary coverage, then any costs should be shared pro rata between Zurich and Westfield.  Westfield states that the "other insurance" provisions contained in both policies[7] dictate such a division of responsibility if both insurers are found to have a duty to defend and indemnify.  Westfield argues that if both insurance policies are applicable then the costs should be shared pro rata until the primary limits are met.  This is the same division of liability as provided for in the "other insurance" provision of Zurich's policy.  Thus, the court will apply the "other insurance provision" from Zurich's policy.[8]

---

[7] In its response to the plaintiff's motion for partial summary judgment, Westfield quotes an "other insurance" provision and states that it attached the relevant portion of the policy as exhibit 1. *See* R. 63, at 3.  However, the page from the policy that was attached as an exhibit does not include the language that was quoted in Westfields's memorandum.  Zurich attached the appropriate pages to its reply, but points out that the provision follows language limiting that clause to personal injury protection." *See* R. 66, exhibit 1.  Whether Westfield's policy includes such a provision does not alter the outcome.

[8] "When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share.  Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total

**IV. Conclusion**

Zurich and Westfield both agreed to protect their insureds against liability arising out of the use of the vehicles covered by their respective policies. Each insurer has a duty to defend and indemnify in the underlying state court action that arose out of the motor vehicle accident on April 10, 2003. The auto liability coverage provided by both Zurich and Westfield is primary coverage, and each must pay its proportionate share up to the primary coverage limits, and then Westfield's excess coverage will apply. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for partial summary judgment (R. 60) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Westfield's motion for summary judgment (R. 62) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the parties are to share the costs of defending and indemnification in accordance with this opinion.

**IT IS FURTHER ORDERED** that the pretrial conference scheduled for January 16, 2009, and the jury trial scheduled for March 9, 2009, are **CANCELLED**.

**IT IS FURTHER ORDERED** that the parties shall file a status report regarding any remaining claims in this action no later than 15 days from the date of entry of this order.

---

of the limits of all the Coverage Forms and policies covering on the same basis."
Exhibit 9-13, attached to R. 60.

11

Signed on  January 12, 2009

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

12